# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

| | |
|---|---|
| **IN RE:**<br><br>**SEROFIM MUROFF,**<br><br>    **Debtor.** | **Case No. 25-00271-NGH** |
| **BLACKHAWK GOLD, LLC, BLACKHAWK MANAGER, LLC, BLACKHAWK ON THE RIVER, LLC, and ISR CAPITAL, LLC,**<br><br>    **Plaintiffs,**<br><br>**v.**<br><br>**SEROFIM MUROFF,**<br><br>    **Defendant.** | **Adv. No. 25-06046-NGH** |

## MEMORANDUM OF DECISION

Blackhawk Gold, LLC, Blackhawk Manager, LLC, Blackhawk on the River, LLC, and ISR Capital, LLC (collectively "Plaintiffs")[1] initiated this adversary proceeding against debtor-defendant Serofim Muroff ("Muroff") in July 2025.  *See* Doc. No. 1.  On Muroff's motion, the Court dismissed the original complaint pursuant to Civil Rule

---

[1] Blackhawk Manager, LLC and ISR Capital, LLC are entities owned and formerly managed by Muroff.  Blackhawk Gold, LLC is an entity formerly managed by Blackhawk Manager, LLC.  Blackhawk Manager owns 20% of Blackhawk Gold and foreign investors own the remaining 80% as limited partners. Blackhawk on the River, LLC, is an entity owned by Blackhawk Gold.

MEMORANDUM OF DECISION - 1

12(b)(6)[2] and granted Plaintiffs leave to amend.  *See* Doc. Nos. 7 & 12.  Plaintiffs filed their amended complaint on December 4, 2025 (the "Amended Complaint").  Doc. No. 18.  Again, Muroff filed a motion to dismiss pursuant to Civil Rule 12(b)(6) for failing to state a claim upon which relief may be granted (the "Motion").  Doc. No. 20.  Muroff also sought dismissal because the Amended Complaint was filed one day after the deadline set by the Court.  Plaintiffs filed an objection, seeking relief to the extent necessary regarding the untimely filing.  Doc. No. 23.  The Court held a hearing on the Motion on January 20, 2026, and took the matter under advisement.  After considering the record, arguments, and applicable law, the following constitutes the Court's findings, conclusions, and disposition of the issues.

**UNTIMELY FILING**

As a preliminary matter, the Court turns to the untimely filing of the Amended Complaint.  At the hearing on November 3, 2025, the Court granted Plaintiffs leave to amend the complaint no later than December 3, 2025.  Despite this directive, Plaintiffs filed the Amended Complaint on December 4, 2025.  While the delay may seem de minimis, the Court does not take lightly a litigant's failure to abide by filing deadlines.  Plaintiffs submitted declarations by their counsel and paralegal in support of the untimely filing.  Doc. Nos. 24 & 25.  The declarations assert the firm did not have the necessary credentials in place to satisfy the Court's multifactor authentication at the time the firm attempted to file the Amended Complaint on December 3.  The firm was unable to

---

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9038, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

MEMORANDUM OF DECISION - 2

resolve the credentialing issue until the following day.  Plaintiffs did, however, timely

serve the Amended Complaint on Muroff and promptly filed the Amended Complaint.

Plaintiffs assert these circumstances constitute excusable neglect and seek appropriate

relief.  Given Muroff's admitted lack of prejudice as a result of the untimely filing and

the circumstances surrounding the delay, the Court will deny Muroff's motion to dismiss

on these grounds and will extend the filing deadline to December 4, 2025, based on

excusable neglect.

**BACKGROUND**

Through Plaintiffs, Muroff solicited investments from foreign investors under the

federal EB-5 Immigrant Investor Program (the "Program").  Pursuant to the Program,

non-citizens may apply for permanent residence if they invest in a commercial enterprise

in the United States and plan to create or preserve a minimum number of jobs for

qualified workers.  To participate in the Program, companies must apply for and receive a

regional center designation.  These regional centers must comply with strict financial and

operating regulations, including restrictions on the use of investor funds.  The Idaho State

Regional Center, LLC, an entity owned and managed by Muroff, obtained such a regional

center designation.  According to the Amended Complaint, Muroff raised $60 million in

EB-5 investor funds through Blackhawk Gold for a real estate development project in

McCall, Idaho.  Through Quartzburg Gold LLC, Muroff raised $78 million in EB-5

investor funds for mining projects in Idaho and Montana.

The Amended Complaint alleges Muroff misappropriated funds for his personal

use by transferring the funds intended for Blackhawk Gold to other entities he controlled,

MEMORANDUM OF DECISION - 3

including Equity Recap Account, LLC ("Equity Recap").  Plaintiffs allege Muroff

misused the investor funds in various ways, including to acquire real property in McCall

in 2011 in the name of Equity Recap, which then owned and developed the property for

several years.  After the United States Citizenship and Immigration Services inquired as

to the ownership of the McCall property in 2014, Muroff allegedly caused a subsidiary of

Blackhawk Gold to purchase the property at a significantly inflated price.  Arising out of

the investment scheme, the SEC filed an enforcement action against Muroff, Blackhawk

Manager, ISR Capital, and Equity Recap, which resulted in a consent judgment entered in

the SEC's favor dated May 10, 2017.  Additionally, as a result of the misappropriated

funds, the investors brought a class action suit against Muroff and several of the

Plaintiffs.  The class action resulted in a settlement agreement (the "Shao Settlement"),

whereby in part Muroff agreed to surrender Blackhawk Manager's ownership interests in

Blackhawk Gold in order to satisfy the SEC consent judgment.  Arising from Muroff's

actions leading up to the SEC consent judgment and Shao Settlement, the Amended

Complaint alleges Plaintiffs have suffered significant damages in the form of losses,

liabilities to investors, legal fees, and others.

Pursuant to the consent judgment, an independent manager was appointed having

sole control over Plaintiffs, and Muroff was prohibited from exercising any control over

any commercial entity involving securities, including entities such as Plaintiffs.  After

entry of the consent judgment, Plaintiffs allege Muroff sold claims owned by or against

Blackhawk Gold, Blackhawk Manager, and Blackhawk on the River (the "Brundage

Plaintiffs") to Brundage Loans, LLC.  As a result of the sales, Brundage Loans filed suit

MEMORANDUM OF DECISION - 4

against the Brundage Plaintiffs asserting it purchased debts owed to Equity Recap by

Blackhawk on the River and debts owed to Blackhawk Manager and Idaho State

Regional Center by Blackhawk Gold.  The Amended Complaint asserts these sales were

in violation of the consent judgment and Muroff lacked authority to sell the assets,

receivables, or rights of the entities.  The Amended Complaint incorporates by reference

a not-yet-operative complaint filed in Plaintiffs' action against Brundage Loans and

Muroff (the "Brundage Complaint").  As a result, Plaintiffs allege they have suffered

damages defending against Brundage Loans' claims.

Counts I through V of the Amended Complaint seek a determination that the debts

owed by Muroff to Plaintiffs are nondischargeable under § 523(a)(2)(A), (a)(4), (a)(19),

and (a)(6).  Counts VI through VIII assert the debts owed by Muroff to the Brundage

Plaintiffs are nondischargeable under § 523(a)(2)(A), (a)(4), and (a)(6).  Muroff seeks

dismissal of the Amended Complaint for failure to state a claim upon which relief may be

granted with respect to all counts.

**ANALYSIS**

### A.      Rule 12(b)(6) Standard

Two seminal Supreme Court cases guide the Court's analysis of motions to

dismiss under Civil Rule 12(b)(6)—*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)

and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  *Twombly* held that to survive a motion to

dismiss under 12(b)(6), a complaint must sufficiently allege facts "to raise a right to relief

above the speculative level, on the assumption that all the allegations in the complaint are

true (even if doubtful in fact)."  550 U.S. at 556.  In *Iqbal*, the Supreme Court elaborated:

MEMORANDUM OF DECISION - 5

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

556 U.S. at 678 (internal quotation marks and citations omitted).

In *Hillen v. Specialized Loan Servicing, LLC (In re Leatham)* this Court summarized the standard for dismissal under Civil Rule 12(b)(6) as follows:

> In determining whether a plaintiff has advanced potentially viable claims, the complaint is to be construed in a light most favorable to the plaintiff and its allegations taken as true. When reviewing the allegations of a complaint, legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness. The complaint should not be dismissed for a failure to state a claim unless it appears that the plaintiff can prove no set of facts in support of the claim which would entitle plaintiff to relief. Thus, a court may properly grant a Rule 12(b)(6) motion if it is clear from the face of the complaint and judicially-noticed documents that the plaintiff cannot prevail as a matter of law.

> . . . [T]he issue is not whether a plaintiff will ultimately prevail but whether he is entitled to offer evidence in support of the claims. It may appear on the face of the pleadings that recovery is very remote and unlikely, but that is not the test. The key is whether or not it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

2017 WL 3704512, at *1 (Bankr. D. Idaho Aug. 24, 2017).

Dismissal under Civil Rule 12(b)(6) may "be based on either the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable

MEMORANDUM OF DECISION - 6

legal theory." *Tracht Gut, LLC v. Los Angeles Cnty. Treasurer & Tax Collector (In re Tracht Gut, LLC)*, 836 F.3d 1146, 1151 (9th Cir. 2016).  If there is merit to a 12(b)(6) motion, Ninth Circuit authority restricts a court's ability to dismiss a case and instead requires the court to provide a complainant leave to amend the complaint "unless it is clear that the complaint could not be saved by any amendment." *Harris v. Amgen, Inc.*, 573 F.3d 728, 736 (9th Cir. 2009) (internal quotation marks omitted).

### B.      Standing to Assert Nondischargeability

At the outset, Muroff asserts dismissal is appropriate because Plaintiffs have not established that they are creditors holding claims against Muroff which may or may not be excepted from discharge.  *See* § 101(10) (defining "creditor" as an entity holding claim against the debtor that arose at or before the order of relief concerning the debtor).  Dischargeability is a two-step process, "first, the establishment of the debt itself; and second, a determination as to the nature—dischargeable or nondischargeable—of that debt." *In re Valle*, 469 B.R. 35, 43 (Bankr. D. Idaho 2012).  In the Amended Complaint, Plaintiffs allege Muroff's wrongful conduct leading up to the SEC consent judgment and Shao Settlement caused direct harm to the entities, independent of the harm to the investors, in the form of liabilities to investors, attorney fees, etc.  The Court ordered Plaintiffs to submit supplemental briefing regarding how that alleged harm gives rise to nonbankruptcy claims against Muroff for purposes of Counts I through V.[3]

---

[3] The Court specifically requested information regarding the debts to be excepted from discharge as set forth in Counts I through V.  Given the Amended Complaint incorporates by reference the Brundage Complaint, the Court did not request such supplemental briefing regarding Counts VI through VIII.

MEMORANDUM OF DECISION - 7

In response to the Court's briefing order, Plaintiffs appear to have shifted their position and assert the following establishes their claims against Muroff: (1) Blackhawk Manager and ISR Capital are jointly and severally liable with Muroff and Equity Recap pursuant to the SEC consent judgment, which gives the entities a right to contribution from Muroff should they pay more than their share of the SEC consent judgment; (2) the Shao Settlement requires Blackhawk Gold to pay the SEC consent judgment, which Plaintiffs argue creates a right to contribution against Muroff; and (3) Blackhawk on the River holds direct claims against Muroff for the inflated purchase price of certain real property and its claims are "encompassed within BH Gold's claims, and when BH Gold pays the SEC Consent Judgment pursuant to the Shao Settlement, the contribution claim will include damages suffered by [Blackhawk on the River]." Plaintiffs are correct that the expiration of state statutes of limitations does not preclude a creditor from raising issues such as fraud in dischargeability proceedings. However, exceptions to discharge, including exceptions for actual fraud, apply only to existing and valid debts as determined by nonbankruptcy law.[4]

Regarding Blackhawk Gold and Blackhawk on the River, the alleged waterfall of liability among the parties falls short of establishing these plaintiffs hold claims that may be excepted from discharge as alleged in Counts I through V. Blackhawk Gold and Blackhawk on the River are not party to the SEC consent judgment, and the Court cannot discern the basis on which these plaintiffs could seek contribution from Muroff upon

---

[4] Plaintiffs continually confuse the debt established by the SEC as being their own. The dischargeability of Muroff's debt to the SEC under the consent judgment is not before the Court.

MEMORANDUM OF DECISION - 8

payment of the consent judgment pursuant to the Shao Settlement.[5] Plaintiffs' assertion that Muroff is liable to Blackhawk on the River for the inflated purchase price of the McCall property is unsupported. Rather than respond to the Court's inquiry regarding when such claim accrued under nonbankruptcy law, Plaintiffs merely claim, in part, that it would be inequitable to deny Blackhawk on the River's ability to participate in the recovery from Muroff. Be that as it may, creditors who sleep on their rights under state law cannot seek a second bite at the apple in nondischargeability proceedings. Based on the allegations in the Amended Complaint, Blackhawk on the River purchased the McCall property prior to the 2017 SEC consent judgment. Plaintiffs do not allege facts that Blackhawk on the River timely pursued or could timely pursue any legal action against Muroff based on that sale.[6] Therefore, the Court will grant the Motion to Dismiss Counts I through V with respect to Blackhawk Gold and Blackhawk on the River for failure to state a claim upon which relief may be granted.

Turning to the remaining defendants, Blackhawk Manager and ISR Capital, the Court is dubious that contribution alone can support a claim of nondischargeability under § 523 considering that exceptions to discharge are to be construed narrowly. *See Century 21 Balfour Real Estate v. Menna (In re Menna)*, 16 F.3d 7 (1st Cir. 1994), overruled on other grounds by *McCrory v. Spigel (In re Spigel)*, 260 F.3d 27 (1st Cir. 2001), (rejecting

---

[5] In the supplemental brief, Plaintiffs assert the SEC consent judgment will be paid with proceeds from the sale of Blackhawk on the River's property and, therefore, it "will thus directly be funding payment that will give rise to the contribution claim against Muroff." Plaintiffs' position on this point appears incompatible with the releases provided for under the Shao Settlement. *See* Amended Complaint, ¶ 58.

[6] In the supplemental brief, Plaintiffs note the applicable statutes of limitations for actions based in fraud, breach of fiduciary duty, and conversion/embezzlement.

MEMORANDUM OF DECISION - 9

indemnity claimant's argument that nondischargeability can extend beyond claims directly caused by the debtor's misrepresentation or malice); *PaineWebber Inc. v. Magisano (In re Magisano)*, 228 B.R. 187 (Bankr. D. Ohio 1998) (rejecting contribution creditor's attempt to bootstrap the nature of debtor's fraudulent actions against third-party to creditor's non-fraud based claims absent assignment or subrogation).

However, citing *Banks v. Gill Distribution Centers, Inc.*, 263 F.3d 862 (9th Cir. 2001), Plaintiffs assert that upon payment of the SEC consent judgment, they will be subrogated to the SEC's position, and their contribution claims will be nondischargeable under § 523(a)(19) and subject to proof on other grounds of nondischargeability.[7] "Subrogation is an equitable principle based on the general theory that one compelled to pay for damages caused by another should be able to seek recovery from that party." *Chenery v. Agri-Lines Corp.*, 766 P.2d 751, 755 (Idaho 1988). Plaintiffs do not identify the source of their asserted ability to be subrogated to the SEC's position upon payment of the consent judgment. Unlike *Banks*, which involved damages for breach of fiduciary duty under state law, Blackhawk Manager and ISR Capital are jointly and severally liable under the SEC consent judgment as joint tortfeasors. Given this posture, the Court has concerns regarding the viability of Plaintiffs' subrogation claim. Plaintiffs did not cite, nor could the Court find, a case in which a co-defendant with a contingent claim of

---

[7] However, as stated in the preceding footnotes, the payment of the SEC consent judgment in satisfaction of the Shao Settlement triggers certain releases.

MEMORANDUM OF DECISION - 10

statutory or equitable contribution against a fellow wrongdoer may be subrogated to the rights of their victim for purposes of asserting nondischargeability.[8]

As it appears amendment is necessary to account for Plaintiffs' recent change in position and allow Muroff the opportunity to assess the claims against him, the Court will grant the Motion with respect to Counts I through V but with leave to amend.

### C.        Claims for Relief – Brundage Plaintiffs

Counts VI through VIII seek nondischargeability on behalf of the Brundage Plaintiffs in connection with what the Amended Complaint refers to as the "Brundage Scheme," i.e., Muroff's purported sales to Brundage Loans in violation of the SEC consent judgment.

### 1.        Count VI:  § 523(a)(2)(A) – False Pretenses, False Representation, or Actual Fraud

The Brundage Plaintiffs assert the debt owed to them in connection with the Brundage Scheme is nondischargeable under § 523(a)(2)(A) as a debt "for money, property, [or] services" to the extent money, property, or services is obtained by "false pretenses, a false representation, or actual fraud."  Section 523(a)(2)(A) "should not be read more broadly than necessary to effectuate policy, e.g., preventing debtors from avoiding debts incurred by fraud or other culpable conduct" and, therefore, "should be construed strictly against creditors in favor of debtors."  *Ghomeshi v. Sabban (In re Sabban)*, 384 B.R. 1, 5-6 (9th Cir. BAP 2008) (quoting *Klapp v. Landsman (In re Klapp)*,

---

[8] Additionally, Plaintiffs assert they hold a contingent contribution claim and, while it is true nondischargeability is declaratory in nature, the Court questions whether Plaintiffs could seek contribution at all given that the equitable remedy does not arise until payment of the judgment and such payment would presumably trigger the releases provided for under the Shao Settlement.

MEMORANDUM OF DECISION - 11

706 F.2d 998, 999 (9th Cir. 1983)). To prove a debt is nondischargeable for false

pretenses or a false representation, the creditor must demonstrate:

> (1) the debtor made . . . representations;
>
> (2) that at the time he knew they were false;
>
> (3) that he made them with the intention and purpose of deceiving the creditor;
>
> (4) that the creditor relied on such representations; [and]
>
> (5) that the creditor sustained the alleged loss and damage as the proximate result of the misrepresentations having been made.

*Ghomeshi v. Sabban (In re Sabban)*, 600 F.3d 1219, 1222 (9th Cir. 2010). Additionally,

in *Husky Int'l Elecs., Inc. v. Ritz*, the Supreme Court held that the "term 'actual fraud' in

§ 523(a)(2)(A) encompasses forms of fraud, like fraudulent conveyance schemes, that

can be effected without a false representation." 578 U.S. 355, 359 (2016). Therefore,

money, property, or services obtained by other forms of actual fraud may result in a

nondischargeable debt. While the Ninth Circuit has not articulated what elements

comprise a fraudulent conveyance scheme under § 523(a)(2)(A), the BAP has determined

that to prevail on a claim against a debtor-recipient of a fraudulent transfer, the creditor

must prove:

> 1) the transferor conveyed the property with the intent to hinder or delay his creditors; and 2) the transferee was a participant in the fraud, such that it could be said that the debtor engaged in "deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another."

*Bonnett v. Moirbia Scottsdale, LLC (In re Bonnett)*, 2020 WL 4371881, at *4 (9th Cir.

BAP July 30, 2020) (quoting *Fisher v. Quay (In re Quay)*, 2005 WL 6488242, at *9

(Bankr. N.D. Ga. Mar. 29, 2005)); *see also Klein v. Peirsol (In re Peirsol)*, 2021 WL

MEMORANDUM OF DECISION - 12

4782462, at *7 (Bankr. D. Idaho Oct. 13, 2021) (applying *Bonnett* factors).  Once it is established a debtor obtained money, property, or services by fraud, "any debt arising therefrom is excepted from discharge."  *Cohen v. de la Cruz*, 523 U.S. 213, 218 (1998); *see In re Sabban*, 384 B.R. 1, 6 (9th Cir. BAP 2008) (holding statutory damages not "assessed on account" of debtor's fraud were dischargeable).

The Amended Complaint does not clearly identify who in this case, if anyone, is the transferor and who is the transferee under *Bonnett* or state fraudulent transfer laws for purposes of actual fraud.  Taking all factual allegations as true, Muroff's conduct toward Brundage Loans may fall within the ambit of false representations under § 523(a)(2)(A).[9] The Amended Complaint alleges Muroff obtained at least $50,000 from Brundage Loans by false representations which, under *Cohen*, would make "any liability" arising therefrom nondischargeable.  After the purported sale of the notes, Brundage Loans took steps to enforce its collection rights against Blackhawk on the River and Blackhawk Gold.  These lawsuits, along with the principal of Brundage Loans allegedly interfering with a pending sale of property, prompted the Brundage Plaintiffs to file a complaint against Brundage Loans, its principal, and Muroff seeking declaratory and injunctive relief, as well as damages.  According to Plaintiffs, the harms they suffered as a result of Muroff's conduct in selling the promissory notes should be excepted from discharge under § 523(a)(2)(A) because the consequent debt is "the result of fraud."

---

[9] The dischargeability of Muroff's debt to Brundage Loans is not before the Court in this proceeding.  Brundage Loans filed a separate adversary proceeding against Muroff.  *See* Adv. Proc. No. 25-06047-NGH.

MEMORANDUM OF DECISION - 13

As stated above, the Supreme Court has clarified that nondischargeability extends to any debt that arises on account of money, property, etc. obtained by fraud.  The debt at issue here is distinguishable from that in *Cohen*.  In *Cohen*, a landlord was liable for overcharging rents in violation of a state ordinance.  523 U.S. at 215.  The landlord filed a petition for relief, and the tenants asserted the rent payments were obtained by the landlord's fraud and were thus nondischargeable.  *Id.*  The tenants also sought to except from discharge treble damages and attorney fees recoverable under the New Jersey Consumer Fraud Act.  *Id.*  The bankruptcy court found the landlord's violations of the state ordinance constituted "actual fraud" within the meaning of § 523(a)(2)(A) and that his conduct amounted to an "unconscionable commercial practice" under the New Jersey Fraud Act.  *Id.* at 215-16.  The bankruptcy court awarded the tenants treble damages and attorney fees and held the entire award was excepted from discharge.  *Id.* at 216.  The landlord argued the treble damages and attorney fees were not excepted because they were not "obtained by" fraud.  The Third Circuit disagreed, concluding the entire damage award "resulted from money obtained through fraud and is therefore nondischargeable." *Id.* at 216-17.  The Supreme Court affirmed.  The Court concluded § 523(a)(2)(A) "is best read to prohibit the discharge of any liability arising from a debtor's fraudulent acquisition of money, property, etc., including an award of treble damages *for the fraud*." *Id.* at 221 (emphasis added).

Fitting Plaintiffs' claims into the framework of § 523(a)(2)(A) calls to mind a square peg and a round hole.  Though they may be tangentially related, Muroff's asserted liability to Plaintiffs does not arise out of or flow from Muroff's alleged fraudulent

MEMORANDUM OF DECISION - 14

acquisition of money from Brundage Loans.  In other words, that Muroff allegedly obtained money from a third party by fraud and that third party then took adverse action against Plaintiffs does not make Plaintiffs "victims of fraud" or make their claims "arise out of fraud."  As set forth in the Brundage Complaint, Plaintiffs assert claims against Muroff for his violation of the SEC consent judgment, not for his fraudulent acts toward Brundage Loans.  Put another way, Plaintiffs fail to allege facts that any damage award assessed in their favor would be assessed on account of Muroff's fraud toward Brundage Loans.[10]  Given that exceptions to discharge are to be construed strictly against creditors in favor of debtors, the Court will grant the Motion to Dismiss with respect to Count VI.

2.   **Count VII: § 523(a)(4) – Fraud or Defalcation While Acting in a Fiduciary Capacity, Embezzlement, or Larceny**

The Brundage Plaintiffs seek a determination that the debt owed to them in connection with Muroff's purported sales to Brundage Loans is nondischargeable pursuant to § 523(a)(4) as a debt for larceny.  "For purposes of section 523(a)(4), a bankruptcy court is not bound by the state law definition of larceny but, rather, may follow federal common law, which defines larceny as a 'felonious taking of another's personal property with intent to convert it or deprive the owner of the same.'"  *In re Ormsby*, 591 F.3d 1199, 1205 (9th Cir. 2010) (quoting 4 COLLIER ON BANKRUPTCY ¶ 523.10[2] (15th ed. rev. 2008)).  "Felonious is defined as 'proceeding from an evil heart or purpose; malicious; villainous . . . wrongful; (of an act) done without excuse of color

---

[10] This is not to say Muroff acted lawfully with respect to the sale of the promissory notes, but the Amended Complaint fails to plead facts that bring Plaintiffs' claim squarely within (a)(2)(A).

MEMORANDUM OF DECISION - 15

of right.'" *Id.* at 1205 n.4.  Unlike embezzlement, "the original taking of the property

must be unlawful."  4 COLLIER ON BANKRUPTCY ¶ 523.10[2] (16th ed. 2026).

The Amended Complaint alleges the notes sold by Muroff belonged to Equity

Recap and Blackhawk Manager, not Muroff, and that Muroff knew he lacked authority to

execute the purported sale agreement given the provisions of the SEC consent judgment.

The Amended Complaint alleges Muroff executed the notes intending to deprive

Blackhawk Manager of its property and wrongfully divert assets for his personal benefit.

The Amended Complaint adequately pleads Muroff's debt to Blackhawk Manager arising

out of the Brundage Scheme is nondischargeable as a debt for larceny.  However, the

Amended Complaint does not allege facts that Muroff took property belonging to

Blackhawk Gold or Blackhawk on the River in connection with the Brundage Scheme

and does not adequately plead a claim for relief that the debt owed to these entities is

nondischargeable as a debt for larceny.  Therefore, Count VII will not be dismissed with

respect to Blackhawk Manager, but will be dismissed with respect to Blackhawk Gold

and Blackhawk on the River.

### 3. Count VIII: § 523(a)(6) – Willful and Malicious Injury

Finally, the Brundage Plaintiffs assert their claim is nondischargeable under

§ 523(a)(6), which excepts from discharge a debt "for willful or malicious injury by the

debtor to another entity or to the property of another entity."  "Both willfulness and

maliciousness must be proven to prevail under § 523(a)(6)."  *Ormsby v. First Am. Title

Co. of Nevada (In re Ormsby)*, 591 F.3d 1199, 1206 (9th Cir. 2010).  However, not all

injuries fall within (a)(6)'s exceptions to discharge; only those that result from willful and

MEMORANDUM OF DECISION - 16

malicious *tortious* conduct by the debtor. *See Lockerby v. Sierra*, 353 F.3d 1038, 1042-43 (9th Cir. 2008). For example, "[e]ven if a breach of contract is intentional, and a debtor intends to cause injury by breaching the contract, the breach is not, by itself, 'tortious conduct,' and is not excepted from discharge pursuant to § 523(a)(6)." *In re Powell*, 2012 WL 2373405, at *4 (Bankr. D. Idaho June 22, 2012). To determine whether a debtor's conduct rises to the level of "tortious" for purposes of § 523(a)(6), courts look to state law. *Id.* (citing *Lockerby*, 353 F.3d at 1041).

The wrongful conduct allegedly committed by Muroff in the Brundage Complaint is the purported sales in violation of the SEC consent judgment. Muroff's violation of the consent judgment, even if intended to injure Plaintiffs, is not in itself "tortious conduct" within the meaning of § 523(a)(6). However, the Court considers whether the Amended Complaint alleges Muroff's conduct rises to the level of being tortious. The Amended Complaint alleges sufficient facts that Muroff's conduct constitutes conversion of the promissory notes. To state a claim for conversion under state law, the plaintiff must establish three elements: "(1) that the charged party wrongfully gained dominion of property; (2) that property is owned or possessed by plaintiff at the time of possession; and (3) [that] the property in question is personal property." *Heath v. Denny's Wrecker Serv., Inc.*, 560 P.3d 1089, 1111 (Idaho 2024) (citation omitted) (alteration in original). "Conversion, being a wrongful and tortious act, cannot originate in the exercise of a legal right." *Id.* Here, it is alleged Muroff lacked authority to assign Blackhawk Manager's rights under the promissory note to Brundage Loans; Blackhawk Manager owned its

MEMORANDUM OF DECISION - 17

rights under the promissory note; and the promissory note is personal property.

Therefore, the injury is of the kind excepted from discharge under (a)(6).

Turning to the willful and maliciousness of the injury—the willfulness requirement of (a)(6) is met "only when the debtor has the subjective motive to inflict injury or when the debtor believes that injury is substantially certain to result from his own conduct." *Id.* Courts may consider circumstantial evidence that tends to show what the debtor must have actually known when taking the injury-producing action. *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1146 n.6 (9th Cir. 2002). As to whether a debtor's actions are malicious, "a malicious injury involves (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." *Ormsby*, 591 F.3d at 1207 (quoting *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1209 (9th Cir. 2001)). Malice may be inferred based on the nature of the wrongful act where willfulness has already been established. *Ormsby*, 591 F.3d at 1206 (citing *Transamerica Com. Fin. Corp. v. Littleton (In re Littleton)*, 942 F.2d 551, 554 (9th Cir. 1991)).

The Amended Complaint alleges Muroff was aware he lacked authority to sell the promissory note to Brundage Loans given the provisions of the SEC consent judgment. Muroff sold the note with the alleged intent of injuring Blackhawk Manager and depriving Blackhawk Manager of its property rights, or with knowledge that injury was substantially certain to occur. The Amended Complaint asserts that Muroff intended to interfere with a pending sale and divert funds for his personal use without just cause or

MEMORANDUM OF DECISION - 18

excuse.  Thus, the Amended Complaint pleads sufficient facts to state a claim for relief under (a)(6).

The Court will deny the Motion with respect to Count VIII and Blackhawk Manager.  Because Plaintiffs fail to allege tortious conduct with respect to Blackhawk Gold and Blackhawk on the River, the Court will grant the Motion to Dismiss with respect to those plaintiffs.

**CONCLUSION**

For the reasons set forth above, the Court will grant the Motion with respect to Counts I through V with leave to amend.  The Court will grant the Motion with respect to Count VI with leave to amend.  Regarding Counts VII and VIII, the Court will deny the Motion with respect to Blackhawk Manager and will grant the Motion with respect to Blackhawk Gold and Blackhawk on the River with leave to amend.  The Court will enter its own order.

DATED: April 21, 2026



_____
NOAH G. HILLEN
Chief U.S. Bankruptcy Judge

MEMORANDUM OF DECISION - 19